Opinion issued June 17, 2014



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-13-00474-CV

————————————

**KENNETH DOUGHERTY, Appellant**

**V.**

**TRUSTMARK NATIONAL BANK, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-29227**

---

## MEMORANDUM OPINION

Appellant Kenneth Dougherty sued appellee Trustmark National Bank, alleging that Trustmark wrongfully foreclosed on a third-party's property in which Dougherty had a superior security interest. The trial court granted summary judgment in Trustmark's favor. We affirm.

# BACKGROUND

This dispute involves loans made at different times by different parties to different parties, but secured by the same collateral.

## A.     March 2008 Loans from Dougherty to DeArmas

On March 26, 2008, Brian DeArmas executed a note in the amount of $292,800 payable to appellant Dougherty ("Dougherty Note 1"). On March 26, 2008, DeArmas executed a security agreement pledging certain items as collateral for this note, which included equipment, machinery, vehicles, tools, and proceeds of such property. In that security agreement, DeArmas represented, among other things, that "Debtor owns the Collateral and has the authority to grant this security interest." On March 27, 2008, DeArmas executed a second note in the amount of $135,000 payable to Dougherty ("Dougherty Note 2"). On March 19, 2008, Daugherty filed a UCC Financing Statement with the Texas Secretary of State evidencing his security interest in the collateral securing Dougherty Note 1.[1]

These Daugherty loans were associated with DeArmas's purchase of commercial real estate from Dougherty to relocate Pro Technik, an automobile-repair business that DeArmas and a partner were purchasing from a third party. DeArmas financed $1 million of the real-estate purchase price through a commercial lender, paid $50,000 in cash as a down-payment, and the Dougherty

---

[1]     It is not clear from the record why the UCC Financing Statement was filed before the dates of the loan or security agreement.

2

notes represented the remainder of the purchase price. Once the Pro Technik business was later purchased, Pro Technik leased this real property from DeArmas, individually.

**B.     June 2008 Loans from Trustmark to Pro Technik**

More than three months later, on June 30, 2008, DeArmas and his partner executed a note on behalf of Pro Technik payable to appellee Trustmark in the amount of $402,000 ("Trustmark Note 1"). On that same day, they executed a second note on behalf of Pro Technik payable to appellee Trustmark in the amount of $103,000 ("Trustmark Note 2"). Both notes were secured by Commercial Security Agreements, also signed on June 30, 2008, granting a security interest in property owned by Pro Technik, which included "All Inventory, Chattel Paper, Accounts, Equipment, and General Intangibles." In these security agreements, DeArmas and his partner represented that the collateral was owned by Pro Technik. Trustmark filed UCC Financing Statements to perfect its security interests on September 8, 2008. Trustmark Note 1 was made to purchase the Pro Technik business, inventory for that business, and improvements to the real property that had previously been purchased from Dougherty. Trustmark Note 2 funded equipment purchases from Dougherty.

3

**C.    Pro Technik's default on the Trustmark Notes 1 & 2 and foreclosure on its collateral**

Pro Technik defaulted on both its notes with Trustmark. On November 29, 2010, Trustmark sent Pro Technik notice of default on Trustmark Note 1, as well as its intent to accelerate the note if the default was not cured within ten days. The notice also stated, "If payment is not tendered per this demand, demand is further made for you to assemble all collateral securing this indebtedness, and make it available for peaceable repossession by Trustmark."

After Pro Technik failed to cure its default, Trustmark took possession of the equipment and other collateral in December 2010. On January 22, 2011, Trustmark provided notice to DeArmas and eleven other entities (including the Internal Revenue Service and several other banks) of its intent to auction Pro Technik's collateral on February 2, 2011. In the meantime, although DeArmas was also in default on his personal Dougherty Notes 1 & 2 secured by some of the same property, DeArmas never notified Dougherty about the Trustmark's notes or about the foreclosure proceedings.

On January 25, 2011, DeArmas sent an email to Trustmark stating his belief that the bank should also notify Mid South Bank, Bayview, and Ken Daugherty as additional potential lienholders. Shortly thereafter, Daugherty learned of the upcoming auction and sent a January 27, 2011 letter to Trustmark stating that

4

Trustmark should not sell Pro Technik's collateral because DeArmas may have given Daugherty an earlier security interest in the same property.

On January 31, 2011, Trustmark responded to Daugherty's letter, stating that Daugherty did not have a security interest in the collateral because Daugherty did not perfect a security interest in the name of Pro Technik, Inc. Trustmark then went forward with its auction, disposing of Pro Technik's collateral and applying the proceeds to its outstanding loans.

On May 16, 2011, Dougherty sued Trustmark for conversion, negligence, violation of the Texas Theft Liability Act, and unjust enrichment, seeking actual damages, exemplary damages, attorneys' fees, and an accounting.

## D. DeArmas's Bankruptcy Proceedings and Dougherty's Claim

DeArmas then filed for Chapter 7 bankruptcy protection, *In re Brian DeArmas*, No. 11-36801-H3-7, in U.S. Bankruptcy Court, S.D. of Texas, Houston Division. On October 28, 2011, Dougherty filed a Complaint Objecting to Discharge of Debtor, *Kenneth Dougherty v. Brian DeArmas*, No. 11-30546. In that complaint, Dougherty set forth details about the Dougherty Note 1, the related security agreement and DeArmas's default. The complaint also stated,

> On October 24, 2011, Defendant was deposed pursuant to a Notice of Examination noticed by Trustmark National Bank ("Trustmark"). During that examination, Defendant provided testimony that established his knowledge that the property being pledged as security to Plaintiff was not owned by Defendant but was instead owned by his company, Pro Technik. This obvious fraud and deception was not

5

disclosed to Plaintiff who believing that Defendant was the actual owner of the property accepted that property as security for the loan.

Defendant subsequently pledged the very same property to Trustmark as security for loans the bank made to Defendant. Unbeknownst to Plaintiff, Defendant's secured loans with Trustmark, on behalf of ProTechnik Inc., were also in default. Trustmark took possession of the items listed in Plaintiff's UCC financing statement in December, 2010, and prepared to auction the items to the public and proceeded to publicly auction the items on February 2, 2011.

Dougherty argued that these facts established that DeArmas committed fraud to entice Dougherty to lend him money while knowing that he had no intention to pay it back. Accordingly, he requested that DeArmas not be allowed to discharge his debt. 11 U.S.C. § 523(a) (exempting from discharge debt obtained under certain false pretenses).

**E.      The Bankruptcy Court's Judgment**

On December 13, 2012, the bankruptcy court entered an Agreed Judgment on Dougherty's claim. The judgment ordered that Dougherty recover $115,000 from DeArmas, which is not dischargeable. The judgment "further ORDERS that as alleged in Plaintiff's Objection to Discharge filed in this proceeding, Defendant made false representations and committed actual fraud with the intent and result being to entice Plaintiff into supplying Defendant money all the while knowing that he had no intention of paying Plaintiff the monies owed."

6

## F.     The Trial Court's Summary Judgment

In the underlying case, Trustmark moved for traditional summary judgment on Dougherty's claims, arguing that Dougherty's claims were all based upon the "allegation that Trustmark repossessed and foreclosed a security interest in certain collateral in disregard of Plaintiff's perfected, first-priority interest in the property." According to Trustmark, its summary-judgment evidence "proves that at the time [Dougherty] obtained the alleged security interest from DeArmas in the collateral, DeArmas had no rights in the collateral." Thus, because Dougherty could not have obtained an enforceable security interest in the collateral, Trustmark could not have owed Dougherty any legal duties with respect to the collateral. Trustmark also argued that its affirmative defense of collateral estoppel was proved as a matter of law because the ownership of the collateral issue was resolved in the federal bankruptcy proceedings.

In response, Dougherty contended that summary judgment on Trustmark's collateral-estoppel affirmative defense was inappropriate because the issues in the bankruptcy proceedings were settled by the parties' agreement, rather than "fully and fairly litigated" and because the relevant issues in the bankruptcy proceeding were different.

Dougherty also argued that there were fact issues that precluded summary judgment. Specifically, he argued that his UCC Financing statement evidencing

his security interest in the collateral together with evidence that Trustmark knew about his interest provides some evidence that Trustmark acted wrongfully in foreclosing on the collateral.

The trial court granted Trustmark's summary judgment, and Dougherty timely appealed.

## ISSUES ON APPEAL

Dougherty brings two issues on appeal:

1. "Under Texas law, the doctrine of collateral estoppel does not apply unless an issue was 'fully and fairly litigated' in a previous proceeding. Here, Appellee claims that an unrelated issue in a bankruptcy proceeding was preclusive effect in this litigation. Can the trial court's summary judgment be affirmed on this affirmative defense?"

2. "Appellee's motion for summary judgment was predicated on statements of a third party with request to the ownership of certain property. In response, Appellant submitted sworn statements by the same third party that are entirely contradictory to the evidence offered by Appellee. No other evidence in the summary-judgment record addresses this issue. Does a genuine issue of material fact exist with regard to the ownership of the property?"

## SUMMARY JUDGMENT

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The motion must state the specific grounds relied upon for summary

8

judgment. *See* TEX. R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant, and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997).

## ANALYSIS

We need not reach the first issue of whether the Trustmark conclusively established its affirmative defense of collateral estoppel because the summary-judgment evidence demonstrates that there is no fact issue about DeArmas's lack of ownership interest in the collateral in which he pledged an interest to Dougherty. We agree with Trustmark that the evidence demonstrates that

9

Dougherty could not have had a security interest in the collateral and, thus, Trustmark could not have owed any duty to Dougherty with regard to that collateral. Dougherty's lack of ownership—and Trustmark's corresponding lack of duty to Dougherty—defeats Dougherty's right of recovery under all his theories of liability. Accordingly, the trial court properly granted summary judgment.

In arguing that summary-judgment was improper, Dougherty asserts that Trustmark did not carry its burden of demonstrating that no fact issue existed about the ownership of the collateral on March 26, 2008—when DeArmas granted a security interest to Dougherty. Specifically, he contends that the summary-judgment record consists of nothing more than inconsistent statements from the same material witness, i.e., DeArmas, that only serve to create a fact issue:

> To demonstrate its alleged ownership interest in the collateral, Trustmark directed the trial court to DeArmas's unsworn security agreement [from Pro Technic to Trustmark], along with his deposition testimony in the bankruptcy proceeding three-and-a-half years later. In response, [Dougherty] offered the sworn security agreement from March 2008, in which DeArmas represented that he was the owner of the collateral.

> Inconsistent statements from the same material witness necessarily create a fact issue that requires a jury to make a determination of credibility and therefore, DeArmas's statement cannot support a summary judgment. And because the summary-judgment record does not contain any evidence (other than DeArmas's inconsistent *ipse dixit*) to establish the owner of the collateral at the time DeArmas signed the original security agreement with [Dougherty], Trustmark has not established that it is entitled to judgment as a matter of law.

10

In response, Trustmark asserts that the summary-judgment evidence proves that Pro Technik, not DeArmas, owned the collateral such that a purported security interest granted by DeArmas personally could not grant any interest. Trustmark contends that the one piece of evidence Dougherty points to—i.e., the security agreement in which DeArmas represented he owned the collateral and granted to Dougherty a security interest—does not create a fact issue in light of the other summary-judgment evidence. We agree with Trustmark that this document does not create a fact issue in light of the remaining, uncontroverted summary-judgment evidence.

Dougherty relies solely upon the March 26, 2008 security agreement in which DeArmas personally pledged a security interest to Dougherty in the collateral and represented that DeArmas owned the collateral. Trustmark provided, as summary-judgment evidence, excerpts from DeArmas's deposition in which he explains that initially the plan was for the closings on his purchase of Dougherty's real estate and on the Pro Technik business to happen at the same time. Because of delays in securing the Trustmark loans, however, the purchase of Pro Technik did not happen until June 30, 2008—more than three months after DeArmas executed the Dougherty notes and security agreement on March 26, 2008. DeArmas also testified in that deposition that he did not personally own any of the collateral described in the security agreement executed in favor of

11

Dougherty. Rather, he testified, that collateral was owned by Pro Technik. When asked why he signed the security agreement for Dougherty personally instead of in the name of Pro Technik, DeArmas testified that he just signed what Dougherty prepared and put in front of him.

In addition to relying upon DeArmas's deposition, Trustmark included as summary-judgment evidence Dougherty's objection to discharge of the amounts due under the Dougherty notes filed in DeArmas's bankruptcy case. In that filing, Dougherty cites the same DeArmas's deposition testimony as "establish[ing] his knowledge that the property being pledged as security to [Daugherty] was not owned by [DeArmas] but instead owned by his company, Pro Technik." Dougherty argued to the bankruptcy court that DeArmas's actions amounted to "actual fraud with the intent and result being to entice [Dougherty] into supplying [DeArmas] money all the while knowing that he had no intention of paying Plaintiff the monies owed." Trustmark also notes that Dougherty's live pleading in the underlying suit states that the "adversary proceeding was eventually settled with an agreed judgment being entered wherein Mr. de Armas admitted to defrauding Plaintiff."

Dougherty's argument that summary judgment was inappropriate rests on the premise that DeArmas's representation in the March 26, 2008 security agreement that he owned the collateral on that date served to "controvert"

DeArmas's later deposition testimony that he actually did not own the collateral on that date and that instead Pro Technik (the entity that later granted a security interest to Trustmark) was the entity that owned the collateral. But even if this were enough in isolation to create a fact issue, the other uncontroverted evidence establishes that DeArmas's statement in the security agreement that he owned the collateral in March 2008 could not have been true.

Specifically, the summary-judgment evidence demonstrates that the Trustmark loans executed by DeArmas on behalf of Pro Technik (which were secured with the same collateral) did not occur until June 2008. Dougherty did not proffer controverting evidence (or even dispute) that it was the proceeds of these later-in-time loans that DeArmas used to purchase the Pro Technik business, equipment, and inventory. This clear, uncontroverted evidence that DeArmas did not acquire ownership rights in Pro Technik until *after* DeArmas represented that he personally owned the property owned by Pro Technik proves that Dougherty could not have acquired an enforceable security interest in the collateral. *See* TEX. BUS. & COMM. CODE § 9.203 (Vernon 2011) (security interest is enforceable "only if" the debtor giving the security interest "has rights in the collateral or the power to transfer rights in the collateral to a secured party").

The fact that Daugherty did not acquire an enforceable security interest in the collateral necessarily defeats his claim that Trustmark owed him a duty to not

13

dispose of the collateral owned by Pro Technik, pledged to Trustmark in Pro Technik's name, and foreclosed on under Trustmark's properly perfected security interest.  The trial court thus correctly granted summary judgment.

## CONCLUSION

We affirm the trial court's summary judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.